UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**RIYAID JAX SWIDAN III**

    **Plaintiff,**

                                          Case No.

vs.                                               HON

**THE COUNTY OF OAKLAND**,
a municipal corporation, and
OAKLAND COUNTY SHERIFF DEPUTIES
"R HEMMING," "K NOVOTNY,"
and "J GREGORY"

Individually, and in their Official Capacities,
Jointly and Severally,

    **Defendants.**                                  **JURY TRIAL DEMANDED**

---

Nicholas E. Backos, P 75941
Attorney for PLAINTIFF
240 Daines Street
Birmingham, MI 48009
(248) 258-1600
nick.e.backos@gmail.com

---

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

NOW COMES the PLAINTIFF, RIYAID SWIDAN ("PLAINTIFF"), by and through his attorney, Nicholas E. Backos; and for his complaint against the **COUNTY OF OAKLAND** ("DEFENDANT COUNTY"), and individually against Oakland County Sheriff Office Deputies: "**R Hemming**," "**K Novotny**," and "**J Gregory**"; (collectively referred to as "DEFENDANT DEPUTIES"), states as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of PLAINTIFF's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391 (b), as the events giving rise to the claims asserted in this complaint occurred within this District.

## PARTIES

4. PLAINTIFF is a resident of the County of Wayne, State of Michigan.

2

5. DEFENDANT COUNTY is a municipal corporation located in the County of Oakland, State of Michigan.

6. DEFENDANT DEPUTY HEMMING was at all relevant times an Oakland County Sheriff's Office Deputy agent and/or employed by DEFENDANT COUNTY, and acting under color of law and within the scope of his employment.

7. DEFENDANT DEPUTY NOVOTNY was at all relevant times an Oakland County Sheriff's Office Deputy agent and/or employed by DEFENDANT COUNTY, and acting under color of law and within the scope of his employment.

8 DEFENDANT DEPUTY GREGORY was at all relevant times an Oakland County Sheriff's Office Deputy agent and/or employed by DEFENDANT COUNTY, and acting under color of law and within the scope of his employment.

9. DEFENDANT COUNTY is liable under state and/or federal law for all injuries proximately caused by:

> Intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to customs, policies, usage and/or practices which deprive citizens of their rights, privileges and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

3

**FACTS**

10. On May 27, 2021, at approximately 3:00 PM, PLAINTIFF called for law enforcement assistance at his mother's home, located at 3250 Welch Rd., Commerce, MI 48390, following a verbal argument involving PLAINTIFF and PLAINTIFF'S mother, Deborah Swidan.

11. PLAINTIFF was 15-years-old at the time.

12. PLAINTIFF exited his mother's home and waited outside for law enforcement to arrive while PLAINTIFF'S mother remained inside the home.

13. While awaiting law enforcement's arrival, PLAINTIFF used his cellphone to call PLAINTIFF'S father, Riyaid Swidan II, who answered PLAINTIFF'S call; and, on information and belief, the phone call remained connected for the entirety of PLAINTIFF'S interactions with DEFENDANT DEPUTIES, as described in the subsequent paragraphs.

14. On information and belief, DEFENDANT DEPUTY HEMMING arrived at 3250 Welch Rd. first, followed by DEFENDANT DEPUTY GREGORY and DEFENDANT DEPUTY NOVOTNY. At all relevant times, DEFENDANT DEPUTIES were on duty as DEFNDANT COUNTY sheriff deputies.

15. Upon his arrival, DEFENDANT DEPUTY HEMMING ignored PLAINTIFF, despite PLAINTIFF'S initiation of the call for law enforcement assistance and PLAINTIFF'S decision to await DEFENDANT DEPUTIES' arrival

4

outside. DEFENDANT DEPUTY HEMMING chose not to speak with PLAINTIFF outside the home, and instead walked past PLAINTIFF into the home to speak with PLAINTIFF'S mother.

16. DEFENDANT DEPUTY GREGORY and DEFENDANT DEPUTY NOVOTNY also entered PLAINTIFF'S mother's home upon their arrival subsequent to DEFENDANT DEPUTY HEMMING.

17. PLAINTIFF re-entered his mother's home, whereupon DEFENDANT DEPUTIES demanded that PLAINTIFF pack PLAINTIFF'S belongings so that PLAINTIFF'S mother could drive PLAINTIFF to PLAINTIFF'S father's home. PLAINTIFF complied with DEFENDANT DEPUTIES' demands, and proceeded to pack his belongings.

18. While PLAINTIFF was packing his belongings, DEFENDANT DEPUTIES verbally belittled PLAINTIFF, using profanities, calling PLAINTIFF names including "punk" and "fucking punk."

19. PLAINTIFF was fearful due to DEFENDANT DEPUTIES' agitated tone, demeanor and decision to escalate by using profanities and referring to PLAINTIFF as "punk" and "fucking punk," so PLAINTIFF turned the speakerphone of PLAINTIFF'S cell phone on so that PLAINTIFF'S father, whose phone call with PLAINTIFF remained connected, could hear what was happening.

5

20. PLAINTIFF set his cellphone down on a table with the speakerphone on, and with PLAINTIFF'S father on the connected line.

21. DEFENDANT DEPUTY GREGORY, in the presence of DEFENDANT DEPUTY NOVOTNY, grabbed PLAINTIFF'S phone from the table.

22. PLAINTIFF verbally inquired as to why DEFENDANT DEPUTY GREGORY took possession of, or otherwise confiscated, PLAINTIFF'S phone.

23. PLAINTIFF neither physically reached for PLAINTIFF'S phone while the cell phone was being held by DEFENDANT DEPUTY GREGORY, nor did PLAINTIFF physically touch DEFENDANT DEPUTY GREGORY.

24. DEFENDANT DEPUTY NOVOTNY, in the presence of DEFENDANT DEPUTY GREGORY, and, on information and belief, in the presence of DEFENDANT DEPUTY HEMMING, without giving any verbal commands, jabbed Plaintiff in the stomach with an unknown object, causing substantial pain and hematoma to PLAINTIFF'S torso/stomach.

25. DEFENDANT DEPUTY NOVOTNY, in the presence of DEFENDANT DEPUTY GREGORY, and, on information and belief, in the presence of DEFENDANT DEPUTY HEMMING, without giving any verbal commands, grabbed PLAINTIFF'S right arm and twisted PLAINTIFF'S arm upward, causing substantial pain to PLAINTIFF.

26. DEFENDANT DEPUTY NOVOTNY, in the presence of DEFENDANT DEPUTY GREGORY, and, on information and belief, in the presence of DEFENDANT DEPUTY HEMMING, while still maintaining his grip and upward pressure on PLAINTIFF'S right arm, slammed PLAINTIFF'S upper body against the wall, causing PLAINTIFF'S chest to strike the wall with such force that it caused a metal necklace PLAINTIFF was wearing to bend and caused PLAINTIFF'S face and/or forehead to strike the wall with substantial force, producing pain and injury to PLAINTIFF'S chest, head and arm.

27. DEFENDANT DEPUTY NOVOTNY, in the presence of DEFENDANT DEPUTY GREGORY, and, on information and belief, in the presence of DEFENDANT DEPUTY HEMMING, while still maintaining his grip and upward pressure on PLAINTIFF'S right arm, pinned PLAINTIFF against the wall for, on information and belief, between 30 to 45 seconds, applying gratuitous pressure to PLAINTIFF'S twisted right arm, left shoulder, and upper body, causing PLAINTIFF to experience difficulty breathing while PLAINTIFF'S chest was pinned to the wall, causing pain to PLAINTIFF, and causing hematomas to PLAINTIFF'S left arm and torso.

28. DEFENDANT DEPUTY NOVOTNY continued to verbally escalate by using profanities toward PLAINTIFF, and continued to call PLAINTIFF a "punk" and/or "fucking punk."

29. DEFENDANT DEPUTY NOVOTNY and DEFENDANT DEPUTY GREGORY sought to conceal their identities from PLAINTIFF, refusing to provide PLAINTIFF with identifying information including but not limited to DEFENDANT DEPUTY NOVOTNY and DEFENDANT DEPUTY GREGORY'S names, badge numbers, or the name(s) of their supervisor(s).

30. DEFENDANT DEPUTIES used excessive force on PLAINTIFF.

31. DEFENDANT DEPUTIES used excessive force on PLAINTIFF while PLAINTIFF was prone and compliant, including but not limited to jabbing PLAINTIFF in the stomach, twisting PLAINTIFF'S arm, slamming PLAINTIFF'S chest and head against the wall, and gratuitously applying pressure to PLAINTIFF'S chest while pinning PLAINTIFF to the wall for, on information and belief, more than 30 seconds.

32. DEFENDANT DEPUTIES used excessive force on PLAINTIFF without giving any verbal commands or while contemporaneously feigning commands.

33. Due to the injuries PLAINTIFF received during the excessive beating by DEFENDANT DEPUTY NOVOTNY, in the presence of DEFENDANT DEPUTY GREGORY, and, on information and belief, in the presence of DEFENDANT DEPUTY HEMMING, PLAINTIFF was examined by medical personnel and it was found that PLAINTIFF sustained abrasion and/or bruises and/or

8

swelling and/or tenderness on his head and/or body and or arms, with a pain severity of 8/10.

34. As a result of the excessive beating by DEFENDANT DEPUTIES, PLAINTIFF suffered severe pain and suffering.

35. As a result of the excessive beating by DEFENDANT DEPUTIES, PLAINTIFF suffered and continues to suffer severe physical pain and/or mental distress from the physical trauma.

## COUNT I: §1983 EXCESSIVE FORCE

36. PLAINTIFF hereby realleges and incorporates by reference paragraphs 1-35 as if fully restated here.

37. As fully described in the preceding paragraphs, the intentional conduct of DEFENDANT DEPUTY NOVOTNY toward PLAINTIFF was objectively unreasonable and constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

38. Upon information and belief, DEFENDANT DEPUTY GREGORY and DEFENDANT DEPUTY HEMMING were aware of the misconduct of their fellow officer, DEFENDANT DEPUTY NOVOTNY, with respect to PLAINTIFF, had a reasonable opportunity to intervene to prevent it, but failed to do so.

39. As fully described in the preceding paragraphs, the conduct of DEFENDANT DEPUTIES toward PLAINTIFF was objectively unreasonable and

constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

40. As a direct and proximate result of DEFENDANT DEPTUIES use of excessive force and/or failure to intervene in excessive force used by their fellow DEFENDANT DEPUTIES, PLAINTIFF suffered injuries and damages including but not limited to physical injuries about his head, arms and body; as well as emotional injuries, all past, present and future; as well as loss of enjoyment of life, humiliation and degradation; as described in preceding paragraphs and which will be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against Defendants, and each of them, in their individual capacities, in whatever amount PLAINTIFF is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interests, attorney fees, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

## COUNT II: §1983 MUNICIPAL/SUPERVISORY LIABILITY

41. PLAINTIFF hereby realleges and incorporates by reference paragraphs 1-40 as if fully restated here.

42. DEFENDANT COUNTY acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in violations to PLAINTIFF.

43. These customs, policies, and/or practices included but were not limited to the following:

    a. Failing to supervise officers to prevent violations of citizens' constitutional rights;

    b. Failing to adequately train and/or supervise officers regarding proper use of force;

    c. Failing to adequately train and/or supervise officers regarding legal search and/or seizures;

    d. Failing to control and/or discipline officers known to harass, intimidate, and/or abuse citizens;

    e. Failing to supervise, review, and/or discipline officers whom DEFENDANT COUNTY knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct;

    f. Failing to require compliance of its officers and/or employees with established policies and/or procedures and/or rules and discipline or reprimand officers who violate these established policies.

11

44. PLAINTIFF's injuries in this case were proximately caused by policies and practices of DEFENDANT COUNTY, which, by its deliberate indifference, allows its police officers to violate the Constitutional rights of citizens without fear or any meaningful investigation or punishment. In this way, DEFENDANT COUNTY violated PLAINTIFF's rights since it created the opportunity for the individually named DEFENDANTS to commit the foregoing Constitutional violations.

45. The misconduct described in the preceding paragraphs has become a widespread practice, and so well settled as to constitute *de facto* policy in the DEFENDANT COUNTY sheriff's department. This policy was able to exist and thrive because government policymakers have exhibited deliberate indifference to the problem, thereby ratifying it.

46. The widespread practice described in the preceding paragraphs was allowed to flourish because DEFENDANT COUNTY has declined to implement sufficient hiring, training and/or legitimate and/or effective mechanisms for oversight and/or punishment of police officer misconduct.

47. The policies and practices of DEFENDANT COUNTY directly and proximately led to the injuries PLAINTIFF suffered at the hands of DEFENDANT DEPUTIES.

48.  As a direct and proximate result of said Constitutional violations, PLAINTIFF suffered loss of freedom, mental anguish, pain and suffering, loss of wages, loss of enjoyment of life, humiliation, degradation and emotional injuries, all past, present, and future.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT COUNTY, in whatever amount PLAINTIFF is found to be entitled, in excess of Seventy-Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interests, attorney fees, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

Respectfully Submitted,

BY: /s/ *Nicholas E. Backos*
    Nicholas E. Backos, P 75941
    Attorney for PLAINTIFF
    240 Daines Street
    Birmingham, MI 48009
    (248) 258-1600
    nick.e.backos@gmail.com

DATED: May 21, 2024